UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

ANETT RODRIGUES,

Defendant.

**OPINION & ORDER**

22-CR-00391 (PMH)

PHILIP M. HALPERN, United States District Judge:

Anett Rodrigues ("Defendant") stands charged in a four-count indictment for (i) conspiracy to commit honest services fraud in violation of 18 U.S.C. § 1349 ("Count One"); (ii) honest services wire fraud in violation of 18 U.S.C. §§ 1343 and 1346 ("Count Two"); (iii) bribery in violation of 18 U.S.C. § 201(b)(2)(B) and (C) ("Count Three"); and (iv) conversion of property of the United States in violation of 18 U.S.C. §§ 641 and 2 ("Count Four"). (Doc. 21).

Before the Court is Defendant's motion (1) to dismiss the Indictment pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure; (2) alternatively, to permit inspection of grand jury minutes pursuant to Rule 6(e)(3)(E)(ii); and (3) to suppress Defendant's statements and evidence obtained derivatively pursuant to Rule 12(b)(3)(C). Defendant filed his motion papers, pursuant to the Court's briefing schedule, on October 3, 2023. (Doc. 59; Doc. 60, "Def. Br."; Doc. 61, "Def. Decl."). The government filed its opposition on October 27, 2023 (Doc. 62, "Gov. Br."), and the motion was fully briefed with the filing of Defendant's reply on November 7, 2023 (Doc. 63, "Reply"). The Court heard argument from the parties on Defendant's motion on December 14, 2023. (*See* Dec. 14, 2023 Min. Entry).

For the reasons set forth herein, Defendant's motion is DENIED.

**BACKGROUND**

Defendant was employed by the National Labor Relations Board ("NLRB") as a Field Examiner for the Newark, New Jersey office. (Doc. 2, "Compl." ¶ 6). Employees seeking to engage the NLRB to investigate and resolve a dispute with their employer may do so by filing a "charge sheet" outlining their allegations with their local NLRB regional office; and employees seeking the NLRB's assistance in forming a union may so by filing a "petition" with their local NLRB regional office. (*Id.* ¶ 9(c)). These charge sheets and petitions are non-public documents which (i) can be provided to the company whose employees raised a dispute with the NLRB or, (ii) can be obtained in redacted form via a request made under the Freedom of Information Act ("FOIA"). (*Id.* ¶ 9(d)). Federal statutes and regulations, and the NLRB's policies, prohibit NLRB employees from using or disseminating non-public information to further their own private interests. (*Id.* ¶ 9(e)).

Defendant allegedly and regularly accessed, between 2017 and 2021, non-public documents on the NLRB's internal computer systems and provided copies of those documents to a co-conspirator in exchange for cash payments. (*Id.* ¶ 8). Defendant's role at the NLRB did not require her to access documents on NLRB's systems from outside of her region but despite this, from late 2017 to early 2021, Defendant accessed over 4,000 documents from outside of her region. (*Id.* ¶ 11). Defendant's co-conspirator was a consultant based in Westchester County, New York who offered consulting services to law firms and other entities with business before the NLRB. (*Id.* ¶ 7). Defendant would take pictures of the non-public NLRB documents on her cellphone and then send the pictures to her co-conspirator via text message. (*Id.* ¶ 12). The co-conspirator would then write checks from his consulting company to Defendant in exchange for Defendant providing the non-public documents. (*Id.* ¶ 13).

Defendant was interviewed by to Special Agents with the U.S. Attorney's Office on April 20, 2021. (Def. Decl. ¶ 10). The Special Agents advised Ms. Rodrigues that the interview was voluntary, that they did not work for the NLRB, and that they were there on behalf of the U.S. Attorney's Office, which was conducting a criminal investigation. (*Id.*, Ex. A at 00:25-00:33 (the Special Agents stating for the record at the outset of the interview that "we've asked Ms. Rodrigues to talk with us voluntarily, she's free to go at any point if she wants to")). They did not inform Defendant that she had a right to remain silent. (*Id.*) No one from the NLRB was present during the interview. Defendant admitted during the interview that she regularly accessed documents on the NLRB's systems at her co-conspirator's request and then sent images of those documents to her co-conspirator. (Compl. ¶ 14.)

## ANALYSIS

I. Motion to Dismiss

Defendant's motion to dismiss the Indictment is brought under Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, which provides that a motion to dismiss based on a defect in the Indictment for failure to state an offense "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B). "An indictment . . . need not be perfect, and common sense and reason are more important than technicalities." *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001). "[D]ismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *Id.* at 165. For that reason, to state an offense, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998); *see also United States v. Dawkins*, 999 F.3d 767, 779 (2d Cir.

2021) (an indictment which used "the same words as [the statute] to charge the defendants" was held to provide "more than enough background to inform the defendants of when and where the offense conduct took place"). Defendants seeking to dismiss an indictment carry a "Herculean burden" given the extraordinary nature of the remedy sought. *United States v. Coren*, No. 07-CR-00265, 2009 WL 2579260, at *1 (E.D.N.Y. Aug. 20, 2009).

"There are occasions, however, where more is required" *United States v. Benjamin*, No. 21-CR-00706, 2022 WL 17417038, at *3 (S.D.N.Y. Dec. 5, 2022). "When one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." *United States v. Pirro*, 212 F.3d 86, 93 (2d Cir. 2000). As Judge Oetken noted in *United States v. Benjamin*, the requirement that an indictment allege both the explicit and implicit elements of an offense "is essential to the validity of the grand jury process" because "[i]f the indictment does not state the essential elements of the crime, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury or that the grand jury acted properly in indicting him." 2022 WL 17417038, at *3 (quoting *United States v. Pirro*, 212 F.3d at 92).

Defendant argues that each of the four counts charged in the Indictment should be dismissed. (Def. Br. at 6-19). The Court addresses each count of the Indictment in turn.

    A. <u>Counts One (Honest Services Fraud Conspiracy) and Two (Honest Services Fraud)</u>

Defendant asserts that Counts One and Two should be dismissed because they fail to allege that Defendant engaged in an "official act," which, the defendant asserts, is required by the Supreme Court's decision in *United States v. McDonnell*, 579 U.S. 550 (2016). (Def. Br. at 6-11). The *McDonnell* court held that "an 'official act' is a decision or action on a 'question, matter, cause, suit, proceeding or controversy.'" 579 U.S. at 574. The Supreme Court further held that the

"question, matter, cause, suit, proceeding or controversy" can be "a determination before an agency." *Id.* Counts One and Two of the Indictment allege that "Rodrigues, who was an employee of the NLRB, solicited and accepted bribes and kickbacks in exchange for providing records from the NLRB's systems to an outside consultant, who then sold those records to persons and entities with business before the NLRB." (Indictment at 2).

Defendant argues that the Eleventh Circuit's decision in *United States v. Van Buren*, 940 F.3d 1192 (11th Cir. 2019) is instructive to resolution of the instant case. (Def. Br. at 10-11). This argument is unavailing. The Eleventh Circuit did not consider the sufficiency of the indictment in *Van Buren*, instead the court only considered the sufficiency of the jury instructions. 940 F.3d 1192. The *Van Buren* court held that the jury instruction proposed by the defendant for honest services fraud "was correct and would have conveyed critical information that the instructions did not otherwise cover" and therefore vacated the honest services fraud conviction. *Id.* at 1204. The underlying indictment in *Van Buren* notably did not contain the words "official act," "question," or "matter." *See United States v. Van Buren*, No. 16-CR-00243 (N.D. Ga.), Superseding Indictment (Dkt. 37).

The Government has sufficiently alleged that Defendant engaged in an official act. Specifically, she made the decision to provide records for money from the NLRB's systems to an outside consultant. The conduct alleged in the Indictment clearly goes beyond the conduct that was held not to constitute an "official act" by the Supreme Court in *McDonnell*. The conduct there was "setting up a meeting, hosting an event, or calling an official (or agreeing to do so) merely to talk about a research study or to gather additional information" *McDonnell*, 579 U.S. at 573. Defendant's alleged decision to bypass the FOIA process and provide non-public documents to a third party for money goes beyond the preparatory conduct at issue in *McDonnell* and is instead

5

"of the same stripe as . . . a determination before an agency" and therefore constitutes an official act. *McDonnell*, 579 U.S. at 569. Each instance of the Defendant unilaterally allowing her co-conspirator to circumvent the FOIA process by providing NLRB documents for money constituted an "official act." *Id.* at 574.

Accordingly, the motion to dismiss Counts One and Two is denied.

B. Count Three (Bribery)

Defendant next argues that Count Three (Bribery) must be dismissed for "failure to allege an actual official duty that was violated" and concludes that Defendant did not violate her official duties by providing NLRB records "because the allegations in that [Count Three] are completely contrary to the NLRB's own Manual, Rules, and Regulations." (Def. Br. at 14). Count Three of the Indictment alleges "Rodrigues solicited and received cash payments, in return for disclosing NLRB records and information, to which Rodrigues had access by virtue of her position at the NLRB, in violation of her official duty not to disclose the records." (Indictment at 3). Defendant argues that the NLRB's rules do not impose a duty not to disclose documents, but instead "unequivocally instructs NLRB staff, such as Ms. Rodrigues, to 'make readily available' such documents to members of the public." (Def. Br. at 15 (citing ULP Manual)). Put differently, Defendant argues that the Government's allegation that the Defendant violated her official duty as a NLRB employee is false.[1] At this juncture however, the Court "accept[s] as true all of the

---

[1] Defendant also argues that "[p]ursuant to NLRB Regulations, Charges and Petitions are non-confidential, publicly available documents." (Def. Br. at 13 (citing 29 C.F.R. § 102.117(b)(1)). The Government argues that 29 C.F.R. § 102.117(b)(1) was amended in 2017 and now provides that "[t]he formal documents constituting the record in a case or proceeding are matters of official record and . . . are available to the public pursuant to the procedures in this section." (Gov. Br. at 8-9). What effect, if any, the 2017 amendment to 29 C.F.R. § 102.117(b)(1) had on Defendant's duties with respect to the instant conduct is not appropriate for adjudication on a motion to dismiss. The Court only need consider, at this stage, whether it is sufficient for the Indictment to allege that Defendant violated an official duty by accepting bribes and kickbacks in exchange for providing NLRB records.

allegations of the indictment" and "does not consider Defendant's "[c]ontrary assertions of fact." *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985). The Indictment sufficiently alleges that Defendant violated an official duty by accepting bribes and kickbacks in exchange for providing NLRB records. That is all that is required at this stage of the proceedings.

Accordingly, the motion to dismiss Count Three is denied.

    C.  Count Four (Conversion)

Defendant argues that Count Four (Conversion)—which charges Defendant with conversion of property of the United States in violation of 18 U.S.C. §§ 641 and 2—should be dismissed because (1) the records are not "property" following the Supreme Court's decision in *Kelly v. United States*, 140 S. Ct. 1565 (2020); and (2) Count Four is duplicitous. The Court addresses each argument in turn.

18 U.S.C. § 641 proscribes the conversion of "any record, voucher, money, or thing of value of the United States or of any department or agency thereof." 18 U.S.C. § 641. The Second Circuit dismissed a conversion count in *United States v. Blaszczak*, holding that the "regulatory information" at issue in that case was not a "thing of value" to the federal agency at issue. 56 F.4th 230, 244 (2d Cir. 2022) ("We cannot agree that such inherently valuable law enforcement information is comparable to the regulatory information at issue in the present case, which was the reimbursement rates that CMS would announce for certain health services and the planned dates of the announcements."). The facts alleged here are more similar to *United States v. Girard*, where the Second Circuit affirmed convictions of DEA agents who sold DEA records without authorization and held that "the Government has a property interest in certain of its private records which it may protect by statute as a thing of value." 601 F.2d 69, 71 (2d Cir. 1979). The Government alleges in Count Four that Defendant sold NLRB records to an outside consultant.

7

The NLRB records are not just regulatory information but are inherently valuable. In any event, this conduct is expressly prohibited by 18 United States Code § 641, which states that anyone who "sells any record of the United States" is guilty of a crime. 18 U.S.C. § 641. The Government's allegation in Count Four that Defendant "without authority, sold, conveyed, and disposed of, records and things of value of the United States and a department and agency thereof" is sufficient.

Defendant next argues, with respect to Count Four, that "[a]n indictment that purports to charge a defendant with a continuing offense in violation of a statute that does not proscribe a continuing offense wrongly joins two or more distinct crimes as a single count, and is thereby duplicitous." (Def. Br. at 17). Defendant is correct that "violations of Section 641 are not continuing offenses" for statute of limitations purposes. *United States v. Green*, 897 F.3d 443, 449 (2d Cir. 2018) (restitution may not be ordered for Section 641 violations outside of the limitations period on a continuing-offense theory). The Second Circuit addressed this question in *United States v. Girard*, where the Government argued that four sales of DEA records "were part of a single continued scheme" and charged those four sales as a single count of unlawful sale and receipt of records in the indictment. 601 F.2d at 72. Defendants in *Girard* argued that the count was duplicitous in that it charged four separate sales as a single offense and the Second Circuit held that the district court "did not abuse its discretion in permitting" the four sales to be charged under a single count. *Id.* (citing *Cohen v. United States*, 378 F.2d 751, 754 (9th Cir. 1967)). The Government's grouping of multiple sales of NLRB records by Defendant under Count Four does not therefore render it duplicitous.

Accordingly, the motion to dismiss Count Four is denied.

II.   <u>Motion to Inspect Grand Jury Minutes</u>

Defendant argues, as an alternative to dismissal, that inspection of the grand jury minutes

8

is warranted here based on a "relevant change in the law since the grand jury was provided legal instructions." (Def. Br. at 20). Defendant argues that "the Indictment combined with the intervening changes in the Government's position on the law show a likelihood that the grand jury was given incomplete and/or erroneous information." (*Id.* at 20-21). Defendant's motion to inspect grand jury minutes is made pursuant to Rule 6(e)(3)(E)(ii) which provides that a court may authorize the disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). To invoke disclosure under this Rule, "a defendant must demonstrate some grossly prejudicial irregularity or some other particularized need or compelling necessity." *United States v. Gibson*, 175 F. Supp. 2d 532, 534 (S.D.N.Y. 2001). "The burden on a party seeking disclosure of grand jury materials is high, as 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" *United States v. Kirton*, No. 20-CR-00322, 2021 WL 1550423, at *1 (S.D.N.Y. Apr. 20, 2021) (citing *Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Indeed, the purpose of the Rule "is to protect the secrecy of the Grand Jury proceedings by restricting disclosure to the exceptional case where a particularized need is shown." *United States v. Weinstein*, 511 F.2d 622, 627 (2d Cir. 1975).

Defendant provides no "tangible basis" for the Court to conclude that any of the alleged impropriety occurred, and the speculation that the jury may have been incomplete or erroneous information is "precisely the type that courts in this district have routinely rejected as basis for vitiating grand jury secrecy." *United States v. Helbrans*, 547 F. Supp. 3d 409, 435 (S.D.N.Y. 2021) (collecting cases). "Mere speculation that the grand jury may have heard insufficient evidence, or that the Government may have improperly instructed the grand jury on materiality, falls far short of the showing to overcome the presumption of secrecy." *United States v. Forde*, 740 F. Supp. 2d

406, 414 (S.D.N.Y. 2010).

The case law cited by Defendant in support of her application are distinguishable. In *United States v. Hoey*, Judge Castel permitted inspection of grand jury minutes where the intervening change in law was "not merely an evolutionary development or incremental change" but rather the imposition of a "but-for" causation requirement "that is non-obvious to the reader from the face of the statute." No. 11-CR-00337, 2014 U.S. Dist. LEXIS 91093, at *9 (S.D.N.Y. July 2, 2014). Judge Castel went on to note that "that not every change in the law that could touch upon the propriety of a grand jury instructions will warrant an *in camera* inspection" of grand jury minutes. *Id. United States v. Twersky* involved a similar change in controlling law—the Supreme Court held that the "willfulness" element of a money laundering charge required proof that the defendant "acted with knowledge that his conduct was unlawful"—which warranted an *in camera* review of grand jury minutes so that the court could determine what legal instructions the grand jury was given. No. 92-CR- 01082, 1994 WL 319367 (S.D.N.Y. June 29, 1994).

Defendant does not argue that there has been similar change in law with respect to the elements of any of the charges against her, but only that the Government charged her "on a legal theory that it has since conceded elsewhere is wrong." (Def. Br. at 21 (citing *United States v. Blaszczak*, 56 F.4th 230, 236 (2d Cir. 2022)). The Government argues that its legal theory in this case is different than the one in *Blasczack*—which charged the defendant with the theft of "government regulatory information"—because this case involves the conversion the Government's "private records which it may protect by statute as a thing of value." (Gov. Br. at 10 (citing *Girard*, 601 F.2d at 71)). The legal theory advanced in this case is indeed different than the one before the Second Circuit in *Blaszack*. Defendant cannot point to the same type of intervening change in controlling law at issue in *Hoey* and *Twersky*, and it is insufficient for

Defendant to base its application on mere speculation that the Government may be proceeding here on a legal theory used in prior cases.

Accordingly, the motion to inspect the grand jury minutes is denied.

III.     Motion to Suppress Pursuant to *Garrity*

Defendant's motion to suppress the statements she made during the April 20, 2021 interview is based upon *Garrity v. New Jersey*, 385 U.S. 493 (1967), which "held that an individual who must choose between forfeiting her job or incriminating herself does not speak voluntarily." *United States v. Ramsey*, No. 21-CR-00495, 2022 WL 539197, at *5–6 (E.D.N.Y. Feb. 23, 2022). In assessing the involuntariness of statements due to economic coercion, "the economic threat must 'reasonably appear to have been of sufficiently appreciable size and substance to deprive the accused of his free choice to admit, to deny, or to refuse to answer.'" *United States v. Roberts*, 660 F.3d 149, 156 (2d Cir. 2011) (quoting *United States v. Montanye*, 500 F.2d 411, 415 (2d Cir. 1974)). "This determination depends on an assessment of the totality of the circumstances." *Id.* "The government bears the burden of proving a defendant's statements were voluntary by a preponderance of the evidence." *United States v. Ferguson*, No. 06-CR-00137, 2007 WL 4240782, at *6 (D. Conn. Nov. 30, 2007) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

Defendant was interviewed on April 20, 2021 by two Special Agents with the U.S. Attorney's Office. (Def. Decl. ¶ 10). Defendant argues that her belief that she would be fired if she did not answer the Special Agents' questions was objectively reasonable and as such, the statements she made during that interview should be suppressed pursuant to *Garrity*. (Def. Br. at 26-27). The Second Circuit addressed the question of whether an explicit threat is required for suppression under *Garrity* in *United States v. Johnson*, 131 F.3d 132 (2d Cir. 1997). The Second Circuit held, in *Johnson*, that a "defendant's alleged belief that he was required to provide

11

information to law enforcement officials or lose his job, based on his subjective understanding of his employer's disciplinary rules, will not give rise to a *Garrity* inadmissibility because he was never explicitly threatened with termination of his employment." 131 F.3d at 132 (citing *United States v. Indorato*, 628 F.2d 711, 716 (1st Cir. 1980)).

The Second Circuit reached this conclusion again in *United States v. Roberts* where it held statements made during a proffer session "did not so plainly threaten Roberts's employment as to deprive him of free choice in deciding whether to speak with government authorities." 660 F.3d 149, 156 (2d Cir. 2011). In the instant case, just like in the proffer sessions at issue in *Roberts*, there were no representatives from the NLRB present during Defendant's interview and as such "[D]efendant never faced a clear-cut choice between making incriminating statements and the loss of [her] job." *United States v. Roberts*, No. 07-CR-00425, 2009 WL 700188, at *9 (E.D.N.Y. Mar. 13, 2009), *aff'd* 660 F.3d 149 (2d Cir. 2011). District courts in this Circuit are in accord. Judge Thompson held in *United States v. Gallo*, that "a defendant's subjective beliefs are not relevant" in assessing coercion under *Garrity*, and instead defendant must show that she "was presented the choice of waiving [her] Fifth Amendment right against self-incrimination or facing discipline." No. 99-CR-00111, 2000 WL 852453, at *6 n.2 (D. Conn. Apr. 13, 2000); *see also United States v. Quintana*, No. 12-CR-00214, 2017 WL 8889843, at *15 (W.D.N.Y. Oct. 23, 2017) ("Under the Second Circuit's precedent, defendant needs to show that he was explicitly threatened with loss of his job if he did not cooperate in this federal investigation, and he was not so threatened.").

The Court has reviewed Defendant's declaration and the annexed audio recording of Defendant's April 20, 2021 interview with the Special Agents and finds that Defendant was not threatened with the loss of her job during the interview. (Def. Decl., Ex. A). The Special Agents did not state—or even imply in any way—that Defendant might lose her job by refusing to answer

any of their questions. To the contrary, the Special Agents made clear before the interview began that it was voluntary and that they did not work for the NLRB. (Def. Decl. ¶ 10). No NLRB employees were present during the interview, and there is no indication on the record that the termination of Defendant's employment was ever discussed or even referenced. (*Id.*). Viewing the totality of the circumstances of Defendant's April 20, 2021 interview does not support a finding of coercion.

Accordingly, the Court holds that the statements Defendant made during her April 20, 2021 interview were voluntary and denies the motion to suppress.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

**SO ORDERED:**

Dated: White Plains, New York
January 10, 2024

_____
PHILIP M. HALPERN
United States District Judge

---

[2] Defendant also argues that "the Court should hold a *Kastigar* hearing, to determine what additional evidence must be precluded and other orders are necessary to ensure that derivative use of Ms. Rodrigues's statements is likewise precluded." (Def. Br. at 26). *Kastigar v. United States* held that when a witness is compelled to give incriminating testimony under a grant of immunity and is thereafter prosecuted for a matter relating to the compelled testimony, the Government bears "the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." 406 U.S. 441, 461-62 (1972). "Courts have subsequently interpreted *Kastigar* to establish a specialized type of proceeding, called a "*Kastigar* hearing," in which the Court can determine whether the Government's evidence was derived from legitimate sources." *United States v. Tournant*, No. 22-CR-00276, 2023 WL 5276776, at *17 (S.D.N.Y. Aug. 15, 2023). Holding a *Kastigar* hearing is appropriate when the defendant "raises a distinct, non-speculative possibility of taint" in the Government's evidence. *See United States v. Helmsley*, 726 F. Supp. 929, 933-34 (S.D.N.Y. 1989). Given the Court's conclusion that the statements Defendant made during the April 20, 2021 interview were voluntary and not the product of economic coercion, a *Kastigar* hearing not needed. Accordingly, the Court denies Defendant's request to hold a *Kastigar* hearing to determine what additional evidence must be precluded.